

**FILED**

May 26 2016, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey D. Stonebraker
Chief Public Defender
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Sidener

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 26, 2016

Court of Appeals Case No.
10A01-1507-CR-1006

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael, Judge

Trial Court Cause No.
10C04-1402-FC-29

**Baker, Judge.**

[1] Joseph Sidener appeals his conviction for Burglary,[1] a Class C felony, as well as the finding that he is an habitual offender. Sidener argues that law enforcement's use of a GPS tracking device to track the movements of a vehicle in which he was a passenger violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We find that Sidener may not challenge the constitutionality of the search, as he lacked a reasonable expectation of privacy in the vehicle. We also find Sidener's challenges to the sufficiency of the evidence and to the State's amendment of the charging information to be unavailing. Accordingly, we affirm the judgment of the trial court.

## Facts

[2] On January 29, 2014, officers of the Evansville Police Department secured a warrant allowing them to place a GPS tracking device on a vehicle belonging to the mother of Jeffrey Green and to monitor that vehicle in search of a connection to several acts of theft that had been committed in Vanderburgh County. Later that evening, officers driving unmarked police cars began following the vehicle after the GPS device indicated that it was moving. The officers followed the vehicle all the way to Clark County, where the GPS indicated that the vehicle was maneuvering in and out of the parking lots of

---

[1] Ind. Code § 35-43-2-1.

businesses at some time between midnight and 1 a.m. The officers believed that the driver of the vehicle was casing the businesses in preparation for a burglary.

[3] Shortly after 1 a.m., Officer Donald Lee Erk saw the vehicle parked in front of the About Face Salon. Officer Erk witnessed a person enter the passenger side of the vehicle before it left the parking lot. Shortly thereafter, Detective John Cox saw the vehicle traveling on the Lewis and Clark Parkway with two passengers inside. The officers then went to investigate the About Face Salon and found that the glass front door had been shattered and that the alarm was sounding. At this point, the officers notified the Clarksville Police Department.

[4] Officers of the Clarksville Police Department entered the About Face Salon and discovered that a computer monitor had been damaged and that the cash register had been pried open. The officers found chips of blue paint in and around the register. One of the owners of the salon arrived and informed the officers that $69 in cash had been taken from the register.

[5] Clarksville police located and stopped the vehicle on Interstate 65 shortly thereafter. Green was driving and Sidener was in the passenger seat. As Sidener stepped out of the vehicle, small shards of glass fell from his pant leg. The officers noticed a blue crowbar on the passenger-side floor and discovered $73 in Sidener's pocket.

[6] The State charged Sidener with class C felony burglary and alleged that he was an habitual offender. The State later amended the information with regard to the habitual offender allegation by changing the dates of commission for two of

the previous crimes that it alleged that Sidener had committed. At the beginning of trial, Sidener moved to suppress the information contained on the GPS monitor and any reference to it. The trial court denied the motion and Sidener later objected to the introduction of the evidence at trial. Following trial, the jury found Sidener guilty as charged. The trial court sentenced Sidener to eight years for the burglary conviction and enhanced the sentence by four years for the habitual offender finding, resulting in a total sentence of twelve years. Sidener now appeals.

# Discussion and Decision

Sidener makes three arguments on appeal. He first argues that any evidence relating to the GPS monitoring of the vehicle should have been suppressed because the search exceeded the scope of the warrant. He also argues that the evidence presented was insufficient to support his conviction. Finally, he argues that the State should not have been allowed to amend the charging information with regard to the habitual offender allegation so close to the start of trial.

# I. Constitutionality of the GPS Search

Both the United States and Indiana constitutions protect individuals against unreasonable searches and seizures by agents of the government. U.S. Const. amend. IV; Ind. Const. art. 1, § 11. The United States Supreme Court has held that the government's installation of a GPS device on a vehicle, and its subsequent use of that device to track the vehicle's movements, constitutes a

"search" under the Fourth Amendment.[2] *United States v. Jones*, 132 S.Ct. 945, 949 (2012). While the search at issue here was conducted pursuant to a valid warrant, the officers' actions may nevertheless be found unconstitutional if they exceeded the scope of the warrant. *Horton v. California*, 496 U.S. 128, 140 (1990); *Conn v. State*, 496 N.E.2d 604, 607-08 (Ind. Ct. App. 1986). Sidener argues that the officers exceeded the scope of the warrant in this case, as he believes that the warrant did not authorize the officers to continue to monitor Green's vehicle outside of Vanderburgh County.

[9] However, the trial court found that Sidener was merely a passenger—he was not the vehicle's owner, nor did he exercise control over the vehicle—and, therefore, he could not challenge the propriety of the search. Tr. p. 23-25. Accordingly, the trial court denied Sidener's motion to suppress the evidence obtained as a result of the GPS monitoring and allowed that evidence to be introduced at trial. Decisions regarding the admission of evidence are within the trial court's discretion and we review such decisions deferentially. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). However, because the trial court's decision in this case concerns the constitutionality of a search, it presents a question of law, which we review de novo. *Id*.

---

[2] We can find no case holding that the same conduct constitutes a search under the Indiana Constitution. For purposes of our analysis here, we proceed as though such conduct would constitute a search under the Indiana Constitution, but we do not decide the issue.

[10] We agree with the trial court. For Fourth Amendment purposes, a defendant may not challenge the constitutionality of a search unless he can demonstrate that he had a reasonable expectation of privacy in the place to be searched. *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998); *Rakas v. Illinois*, 439 U.S. 128, 153-55 (1978). As Sidener was only a passenger in the vehicle, he seems to acknowledge that he cannot challenge the search under the Fourth Amendment. Appellant's Br. p. 14; *see Rakas*, 439 U.S. at 155 (passengers who had no reasonable expectation of privacy in vehicle in which they were riding could not challenge the constitutionality of a search of that vehicle).

[11] Instead, Sidener relies on the Indiana Constitution, which he believes provides broader protection in this case. He points out the analysis under our State's constitution focuses not only on the defendant's interest in the premises searched, but also on his possessory interests in any property seized. *Bradley v. State*, 4 N.E.3d 831, 839 (Ind. Ct. App. 2014).

[12] At this point, however, Sidener's argument becomes strained. He attempts to distinguish the initial placement of the GPS device, which he apparently characterizes as a search of the premises, from the subsequent tracking of the GPS device, which he attempts to characterize as a seizure of property. Appellant's Br. p. 15. Although Sidener does little to clarify this point, we understand him to mean that the data regarding the vehicle's whereabouts is his "property" that the government "seized" by recording. However, Sidener cites to no case that makes any distinction between the placement of a GPS device

and the subsequent tracking of that device, let alone the distinction between search and seizure that he proposes.

[13] This distinction is artificial and makes little sense. The United States Supreme Court has made clear that the "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a '*search*.'"[3] *Jones*, 132 S.Ct. at 949 (emphasis added). The Court has also made clear that the reason it considers such an action to be a search is because "[t]he Government physically occupied private property *for the purpose of obtaining information*." *Id.* (emphasis added). The entire purpose of placing a GPS device on a vehicle is to obtain information about that vehicle's subsequent movements, and it therefore makes sense that it is the placement of the device *and* the subsequent tracking of that device that constitute the "search." *Id.*

[14] Furthermore, even assuming that information regarding the whereabouts of Green's vehicle could be construed as "property" that had been "seized," Sidener has failed to show an interest in it. We take Sidener's point that individuals do not expect the government to monitor their daily movements by GPS device, and we acknowledge the constitutional concerns raised by the prospect of long-term GPS monitoring. *See Jones*, 132 S.Ct. at 955 (Sotomayor,

---

[3] In his concurring opinion in *Jones*, Justice Alito noted that "[a] seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property, and here there was none." *Jones*, 132 S.Ct. at 958 (Alito, J., concurring) (quotations omitted) (noting that "the GPS did not interfere in any way with the operation of the vehicle").

J., concurring). However, Sidener's case does not raise these concerns because the government had no interest in *Sidener's* movements, nor did it seek to invade *his* privacy. In fact, the officers did not even know that Sidener was a passenger until they stopped the vehicle. Accordingly, Sidener has not shown that his personal interests were affected by the GPS monitoring of Green's vehicle and, therefore, he cannot challenge the search of the vehicle under the U.S. or Indiana constitution.

## II. Sufficiency of the Evidence

[15] Sidener next argues that the State did not present sufficient evidence to support his class C felony burglary conviction. When considering a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We will affirm if the probative evidence and the reasonable inferences drawn therefrom could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

[16] The evidence here indicated that Green's car was driving around the parking lots of businesses in the middle of the night. Tr. p. 60-61. An officer later saw the vehicle parked in front of the About Face Salon and witnessed an individual get into the passenger side. *Id.* at 75. After the vehicle drove away, another officer saw that there were two people inside of it. *Id.* at 131. Officers then noticed that the salon's glass door was shattered. Upon entering, they discovered that the cash register had been pried open and noticed blue paint

chips around the pry marks. *Id.* at 178-83. One of the store's owners arrived and informed the officers that $69 was missing from the register. *Id.* at 213. Officers later stopped Green's vehicle. As Sidener exited from the passenger side, the officers noticed small shards of glass fall from his pant leg. *Id.* at 252-53. They also noticed a blue crowbar underneath the passenger-side seat. *Id.* The officers searched Sidener and found a total of $73 in his pockets.

[17] The question before us is whether a reasonable jury could draw inferences from this circumstantial evidence that would establish Sidener's guilt. *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000). We have no trouble concluding that a reasonable jury could have done that here. Sidener's argument to the contrary amounts to a request that we reweigh this evidence, which we may not do.

## III. Amendment of the Charging Information

[18] Finally, Sidener argues that the trial court erred in allowing the State to amend the charging information with regard to the habitual offender allegation. The charging information listed five prior felonies that Sidener had allegedly committed. On the day before trial, the State amended the dates of commission of the first two felonies listed. Appellant's App. p. 50, 96. Sidener effectively argues that this prejudiced his defense because, once these dates were corrected, he could no longer argue that they were incorrect.

[19] Indiana Code section 35-34-1-5 allows the State to amend an indictment or information at any time to correct, among other things, "any . . . defect which

does not prejudice the substantial rights of the defendant." Our Supreme Court has squarely addressed the very same issue that Sidener now raises and has held that the amendment of dates of commission of crimes in support of an habitual offender allegation did not affect a defendant's substantial rights where "the amendments did not preclude [the defendant] from being aware of the crimes which the State used to establish his habitual offender status." *Brooke v. State*, 516 N.E.2d 9, 14 (Ind. 1987); *see also Hudson v. State*, 443 N.E.2d 834, 836-37 (Ind. 1983). Such is the case here, as only the dates of commission were amended; the offenses, cause numbers, and dates of sentencing were unchanged. Accordingly, Sidener cannot claim that he was unaware of the crimes that the State planned to point to in support of the habitual offender allegation and, therefore, his defense was not prejudiced by the amendment.

[20] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.